IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DIONDRA MILLER,**<br>　　　Plaintiff, | :<br>:<br>: |
| v. | : **CIVIL ACTION NO. 23-CV-4924** |
| **DOYLE & HOEFS LLC,** *et al.*,<br>　　　Defendants. | :<br>:<br>: |

<u>MEMORANDUM</u>

**KENNEY, J.**                                                                                                                    **FEBRUARY 7, 2024**

　　　Plaintiff Diondra Miller initiated this civil action by filing a *pro se* Complaint against Doyle & Hoefs LLC ("D&H") and Amy F. Doyle, Esquire, raising claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p.  Miller seeks leave to proceed *in forma pauperis*.  For the following reasons, the Court will grant Miller leave to proceed *in forma pauperis* and dismiss the Complaint.

**I.        FACTUAL ALLEGATIONS**

　　　Miller contends that Defendants "utilized unfair and deceptive means in the attempt to collect an alleged debt by intruding upon [her] seclusion."  (*See* Compl. (ECF No. 2) at 1.)[1] Miller asserts that she is a "consumer" and Defendants are "debt collectors" as those terms are used in the FDCPA.  (*Id.* at 2, 9.)  According to Miller, Defendant Doyle is the "co-owner" of D&H.  (*Id.* at 2, 10.)

　　　Miller avers that on April 10, 2023, Doyle "contacted the local post office to obtain [Miller's] change of address information."  (*Id.* at 3.)  Miller asserts that the request for boxholder information was made in accordance with 39 C.F.R. § 265.6(d)(4)(ii), and that "PS

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

Form 1093" should only be used in "circumstances stated in Paragraph (d)(5)(i) and (d)(5)(iii)." (*Id.*)  Miller avers that "39 CFR(d)(5)(i)" provides that "names and addresses of postal service customers will be furnished only to federal, state or local government agencies upon written certification that the information is required for the performance of its duties" and "39 CFR (d)(5)(iii) states that boxholder information may be disclosed only pursuant to a subpoena or court order."  (*Id.* at 3-4.)  Miller further contends that Defendants did not possess a subpoena or court order and, instead, "illuding [sic] that they were federal, state, or local government agencies" obtained boxholder information from the United States Postal Service ("USPS").  (*Id.* at 3-4.)  Miller alleges that by failing to identify themselves as debt collectors to the USPS, Defendants violated 15 U.S.C. §§ 1692b(1) and 1692e(10).  (*Id.* at 4.)  Miller also asserts that the Defendants "intruded upon [her] seclusion by failing to fully disclose" that D&H was a debt collector and by "indirectly suggesting" that they were a government agency in order to obtain her boxholder information.  (*Id.* at 4-5.)

Attached to the Complaint as an exhibit is an April 18, 2023 letter from Doyle to the Postmaster for Upper Darby, Pennsylvania wherein Doyle sought an address for Miller.  (*Id.* at 19.)  The letter specifically states that it is a "REQUEST FOR CHANGE OF ADDRESS OR BOXHOLDER INFORMATION NEEDED FOR SERVICE OF LEGAL PROCESS."  (*Id.*)  In the letter, Doyle identified herself as an attorney and certified that Miller's address would be "used solely for service of process in connection with actual or prospective litigation" in Delaware County.  (*Id.*)  Under the heading "FOR POST OFFICE USE ONLY," a notation was made indicating that Miller "receive[d] mail as addressed" in the letter.  (*Id.*)

Miller alleges that on or about April 15, 2023, she received a notice dated April 10, 2023 from D&H wherein D&H informed her that it was a debt collector "attempting to collect a debt

2

that [she] allegedly owed to American Express [AMEX]." (*Id.* at 5-6.)   Miller asserts that the dunning letter did not state that D&H was an attorney for AMEX, but instead used a document with D&H letterhead informing her that the communication was from a debt collector.  (*Id.* at 6.)  Miller avers that this notification was "misleading and confusing" in violation of the FDCPA.  (*Id.*)  A copy of this letter was attached to the Complaint as an exhibit.  In the letter, which is dated April 10, 2023,  D&H advises Miller that it is seeking collection of an outstanding debt on an AMEX account ending in "x42002."  (*Id.* at 21.)  D&H identified itself in the letter as a "debt collector . . . trying to collect a debt that "Miller owe[s] to American Express."  (*Id.*)

Miller notified D&H via "CFPB complaint"[2] submitted April 15, 2023, that it was in violation of 15 U.S.C. § 1692e(3) of the FDCPA "by implicating that the communication is from an attorney in the attempt to oppress [her] and coerce [her] out of payment of an alleged debt." (*Id.* at 6, 23.)  She also alleged that Defendants were in violation of the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801, *et seq.*, "for possessing [her] nonpublic personal information without [her] consent."[3]  (*Id.*)  Miller included an April 13, 2023 cease and desist letter with her CFPB complaint directing D&H to stop all communication and requests for payment.  (*Id.* at 6-7, 25.)

---

[2] The Court understands Miller's use of "CFPB" to refer to the Consumer Financial Protection Bureau, which provides a mechanism for individuals to submit a complaint about financial products and services to companies for response.  *See* https://www.consumerfinance.gov/complaint/ (last visited February 2, 2024).

[3] Although asserted in her CFPB Complaint, Miller does not allege violations of 15 U.S.C. § 1692e(3) or the Gramm-Leach-Bliley Act in her Complaint before this Court.  Even if she had intended to bring claims under the Gramm-Leach-Bliley Act, the Act does not support a private cause of action.  *See, e.g.*, *USAA Fed. Sav. Bank v. PLS Fin. Servs., Inc.*, 340 F. Supp. 3d 721, 726 (N.D. Ill. 2018) ("[I]t is well-recognized that the ["Gramm-Leach-Bliley Act] does not provide a private right of action to enforce its rules." (citing cases)); *Barroga-Hayes v. Susan D. Settenbrino, P.C.*,  No. 10-5298, 2012 WL 1118194, at *5 (E.D.N.Y. Mar. 30, 2012) (same).

Miller further indicated that her notice was sent pursuant to 15 U.S.C. § 1692c(c) of the FDCPA. (*Id.* at 25.)

D&H responded to the CFPB complaint on April 17, 2023, by stating that "[AMEX] placed the account with [D&H] on Saturday, April 8, 2023" and a "Demand Letter" was sent to Miller on Monday, April 10, 2023 informing her of D&H's representation of AMEX. (*Id.* at 27.) D&H also indicated in its response that "3 outbound calls [were made] to Ms. Miller but we never reached her." (*Id.*) Miller's file at D&H was marked as "cease and desist" and "no further phone attempts [would] be made." (*Id.* at 7, 27.)

Miller asserts that D&H violated the cease and desist on June 2, 2023 by communicating with her by mail. (*Id.* at 8.) According to Miller, D&H advised her that AMEX "authorized [D&H] to make [Miller] a special offer to settle the alleged outstanding balance in exchange for the reinstatement of the alleged Card Membership." (*Id.* at 8.) Miller asserts that she received this settlement letter on the same day that she "began receiving letters from lawyers regarding the case" filed by D&H in the Delaware County Court of Common Pleas. (*Id.* at 7-8.) Miller contends that because she received letters from other lawyers on the same day she received the settlement letter, she "must assume that [D&H] used this opportunity to further abuse and oppress [her] by attempting to coerce payment of an alleged debt." (*Id.* at 8.)

Attached to the Complaint as an exhibit is a May 30, 2023 letter from D&H to Miller indicating that AMEX authorized D&H to "make a special offer" providing Miller with an "opportunity to regain Card Membership and have [her] account . . . reinstated." (*Id.* at 29.) In order to qualify for reinstatement, Miller was required to pay the full balance owed, and she was also advised that there were a variety of payment options available to her. (*Id.* at 29-30.)

4

Based on these allegations, Miller asserts that Defendants violated the following sections of the FDCPA: (1) 15 U.S.C. § 1692b(1), for failing to fully identify themselves to the USPS; (2) 15 U.S.C. § 1692c(c), by sending communication after Miller notified them in writing that she refused to pay and requested that they cease further communication; and (3) 15 U.S.C. § 1692e(10), by using false representations and deceptive means to obtain location information about her. (*Id.* at 9-11.) Miller further contends that each of the Defendants are "liable to [her] in the amount of $1000 pursuant to 15 U.S.C. § 1692k(a)(1)." (*Id.* at 10-11.)

Miller also asserts a claim for intrusion upon seclusion, contending that Defendants failed to fully identify themselves to the USPS as debt collectors and by "illuding that the purpose of the request was required to fulfill their duties as a Federal, State or Government agency." (*Id.* at 11-12.) Miller alleges that the intrusion has caused her "to experience anxiety, depression, mental anguish, [and] lack of sleep." (*Id.* at 12-13.) Miller seeks monetary damages for Defendants' alleged violations. (*Id.* at 13-14.)

## II.   STANDARD OF REVIEW

The Court will grant Miller leave to proceed *in forma pauperis* because it appears that she is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir.

5

2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Miller is proceeding *pro se*, the Court construes the allegations in the Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "'cannot flout procedural rules - they must abide by the same rules that apply to all other litigants.'" *Id.*

### III. DISCUSSION

#### A. Claims Under the FDCPA

"Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019) (quoting 15 U.S.C. § 1692(e)). "The FDCPA pursues these stated purposes by imposing affirmative requirements on debt collectors and prohibiting a range of debt-collection practices." *Id.* (citing 15 U.S.C. §§ 1692b-1692j); *see also Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 585 (3d Cir. 2020) (*en banc*) ("The FDCPA protects against abusive debt collection practices by imposing restrictions and obligations on third-party debt collectors."). Among other things, the FDCPA prevents debt collectors from engaging in harassing, oppressive or abusive conduct to collect a debt, § 1692d, making false, deceptive, or misleading representations in connection with debt collection, § 1692e, and using "unfair or unconscionable means" to collect a debt, § 1692f. To state a claim under the FDCPA, a plaintiff must allege plausibly that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves

6

an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021) (internal citations omitted). Where a plaintiff fails to allege facts supporting each of these elements, the FDCPA claim is not plausible. *See Humphreys v. McCabe Weisberg & Conway, P.C.*, 686 F. App'x 95, 97 (3d Cir. 2017) (*per curiam*) (concluding that FDCPA claim was pled based on "conclusory and speculative statements that cannot survive a motion to dismiss").

A "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). "Debt" for purposes of the FDCPA is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 1692a(5). The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). In that regard, the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995); *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011); *Ahmed v. W. Coast Servicing Inc.*, 541 F. Supp. 3d 563, 576 (E.D. Pa. 2021) (finding law firm that regularly handles debt collection matters to be "debt collector" under the FDCPA). For purposes of statutory screening of Miller's Complaint pursuant to 28 U.S.C. § 1915(e), the Court assumes

that these definitions are satisfied here and focuses on the fourth element of an FDCPA claim, *i.e.*, whether Miller has plausibly alleged a violation of the statute.

Miller alleges several specific violations of the FDCPA.  According to Miller, Defendants violated § 1692b(1) because they did not fully identify themselves as debt collectors to the USPS when they were attempting to acquire her location information. (Compl. at 9, 11.)  She further claims that Defendants violated § 1692c(c) by sending communication after she notified them in writing that she refused to pay and requested that they cease further communication.  (*Id.* at 10-11.)  Miller also contends that § 1692e(10) of the FDCPA was violated because Defendants used false representations and deceptive means to obtain information about her.  (*Id.* at 9-10.)  The Court will address Miller's allegations in turn.

1. **Section 1692b(1)**

According to Miller, Defendants violated § 1692b(1) because they "misrepresented themselves" and did not identify themselves as debt collectors to the USPS when they were attempting to acquire Miller's location information.  (Compl. at 4-5, 9, 11.)  Relying on 39 C.F.R. § 265.6(d)(4)(ii), Miller further avers that Defendants "stated that the boxholder information requested was for legal proceedings illuding [sic] that they were federal, state, or local government agencies requesting information required for the performance of duties, when in fact they are not Federal, State or local government but are debt collectors."  (*Id.* at 3.)

The Defendants' request to the USPS, which Miller appended to her Complaint, indicates that Miller is mistaken that Defendants were attempting to obtain boxholder information because the address indicated for Miller was a street address and not a post office box address.  (*Id.* at 19.)  Regardless, Miller's reliance on the version of 39 C.F.R. § 265.6(d) cited in her Complaint is improper because the version she cites was no longer effective during the time frame of the

8

events she describes in her Complaint.[4]  Rather, the version upon which Miller relies was effective from September 1, 2005 to December 26, 2016.  *See* 39 C.F.R. § 265.6.  The current version of the regulation, in force in April 2023, does not contain the sections to which Miller refers in her Complaint.[5]

Section 1692b(1) requires a debt collector communicating with a third party for the purpose of acquiring location information about the consumer to "identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer."  15 U.S.C. § 1692b(1).  While the debt collector is required to identify himself or herself, § 1692b prohibits the debt collector from stating that the "consumer owes any debt" (15 U.S.C. § 1692b(2)), and from using "any language or symbol on any envelope or in the contents of any communication that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt" (15 U.S.C. § 1692b(5)).  Accordingly, contrary to Miller's assertions that Defendants violated § 1692b(1) because they did not identify themselves as debt collectors to the USPS, it appears that if they had done so, they may have been in violation of 15 U.S.C. §§ 1692b(2) and (5) of the FDCPA.  The communication that Defendants made to USPS was for the sole purpose of confirming Miller's street address.  (Compl. at 19.)  A debt collector may make such confirmation even if it has the consumer's current location to ensure that the address remains current and correct.  *See McKinley v. Everest Receivable Servs., Inc.*, No. 19-1289, 2022 WL 446407, at *17 (W.D.N.Y.

---

[4] Furthermore, Miller relies on 39 C.F.R. §§ 265.6(d)(5)(i) and (iii) (*see* Compl. at 3-4), whereas the exhibit she attached to the Complaint specifically notes that the information would be provided in accordance with 39 C.F.R. § 265.6(d)(4)(ii).  (*Id.* at 3-4, 19.)

[5] The current version of 39 C.F.R. § 265.6(d), which was effective as of October 24, 2018, pertains to responses to requests made pursuant to the Freedom of Information Act as the Act applies to the USPS.  See 39 C.F.R. §§ 265.1 and 265.6.

Feb. 14, 2022). Miller has failed to allege a plausible violation of § 1692b(1). Moreover, in accordance with §§ 1692b(2) and (5), the communication to USPS was limited to confirming or correcting Miller's location information, and there was no indication in the communication to USPS that Defendants were debt collectors or that Miller owed a debt. (Compl. at 19.)

### 2. Section 1692c(c)

Miller alleges that Defendants violated § 1692c(c) because even though she instructed them via letter dated April 13, 2015 to stop all communication and requests for payment, Defendants sent her a "settlement letter" on June 2, 2023. (*Id.* at 6-8, 25.) According to Miller, D&H advised her in the letter that AMEX "authorized [D&H] to make [Miller] a special offer to settle the alleged outstanding balance in exchange for the reinstatement of the alleged Card Membership." (*Id.* at 8.)

Section 1692c(c) states that "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer" subject to certain exceptions, including to notify the consumer that the debt collector or creditor may invoke ordinary specified remedies or intends to invoke such a remedy. In analyzing § 1692c(c), the United States Supreme Court has observed that "it would be odd if the [FDCPA] empowered a debt-owing consumer to stop the 'communications' inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt." *Heintz v. Jenkins*, 514 U.S. 291, 296 (1995). To the contrary, courts may plausibly understand the exceptions in § 1692c(c) to treat "court-related document[s]" as notifications that the debt collector or creditor is seeking ordinary judicial remedies. *Id.*

Specified remedies include filing suit against the debtor, or extending a settlement offer to the debtor.  *See Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012) ("A settlement offer is an example of a 'specified remedy'" for the purposes of subsection (c)(2)) (citing *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 399 (6th Cir.1998) (holding that non-coercive settlement offers are excepted communications under § 1692c(c)).  An unequivocal and non-coercive offer to settle a disputed debt for a definite reduced amount is a "specified" remedy "ordinarily invoked" by a debt collector.  *See Vazquez v. Pro. Bureau of Collections of Maryland, Inc.*, 217 F. Supp. 3d 1348, 1352 (M.D. Fla. Nov. 18, 2016) (citing *Smith v. ARS Nat'l Servs., Inc.*, 102 F. Supp. 3d 1276, 1279-81 (M.D. Fla. April 20, 2015).

The United States Court of Appeals for the Sixth Circuit reasoned that prohibiting all offers of settlement under the FDCPA would "be contrary to the purpose of the Act" because it "would prohibit collectors from sending noncoercive settlement offers as a remedy." *Lewis*, 135 F.3d at 389-99.  In *Lewis,* the debt collector made two contacts with the consumer, after the consumer requested the debt collector cease contact, via one letter and one telephone call.  The letter stated in relevant part:

> **YOUR ACCOUNT HAS BEEN TRANSFERRED TO MY OFFICE FOR FINAL REVIEW.**
>
> IN A PERCENTAGE OF CASES, I FIND THAT PAYMENT ARRANGEMENTS MAY NOT HAVE BEEN OFFERED BY OUR AFFILIATED OFFICE. IN ORDER TO PROVIDE YOU WITH AN OPPORTUNITY TO PAY THIS DEBT, PLEASE SELECT ONE OF THE FOLLOWING PAYMENT ARRANGEMENTS AND ENCLOSE PAYMENT, OR PROVIDE ME WITH A NUMBER WHERE I CAN CONTACT YOU TO DISCUSS TERMS.

*Id.* at 396 (bolded emphasis in original).  The consumer sued the debt collector asserting that it violated § 1692c(c) of the FDCPA by sending the letter after the consumer requested that they cease communications.  *Id.* at 398.  In construing the language contained in the debt collector's

letter, the Sixth Circuit decided that the letter fell within the exception of § 1692c(c)(2). *Id.* at 398-99. In the opinion, the Sixth Circuit further distinguished an offer of a payment plan from a demand for payment, thus reconciling its reasoning with the FTC's policy statement. *Id.*

The United States Court of Appeals for the Third Circuit has also held that prohibiting settlement offers "would force honest debt collectors seeking a peaceful resolution of the debt to file suit in order to advance efforts to resolve the debt – something that is clearly at odds with the language and purpose of the FDCPA." *See Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008) (citing *Lewis*, 135 F.3d at 399). "Permitting the use of settlement letters may allow resolution of a claim without the 'needless cost and delay of litigation . . . [and] is certainly less coercive and more protective of the interests of the debtor.'" *Id.*

The May 30, 2023 letter from Defendants, which Miller appended to her Complaint (*see* Compl. at 29-30), cannot be the basis of a plausible claim for violation of § 1692c(c) since it is facially compliant with the FDCPA as a straightforward and unequivocal offer to settle the disputed debt. Miller is invited to accept the offer by paying the specified amount and is advised that there are payment options available to her. (*Id.*) Under such circumstances, even the least sophisticated consumer would read the letter as an actual invocation of a specified remedy. In fact, Miller refers to the letter in the Complaint as a "settlement letter." (Compl. at 8.) Further, the Complaint itself includes no well-pled factual allegations that Defendants engaged in any allegedly wrongful conduct aside from sending Miller the one letter.[6] The Court therefore

---

[6] Miller avers that she began "receiving letters from law firms displaying embarrassing verbiage" and "offering services because of the complaint" filed by Defendants in the Delaware County Court of Common Pleas. (Compl. at 7.) Miller further asserts that because she received the letters from other law firms on the same day as the settlement letter, she "must assume that [D&H] used this opportunity to further abuse and oppress [her] by attempting to coerce payment

concludes that one, non-threatening letter, containing specific terms of an offer for settlement with "a variety of payment options available" does not contravene the purposes of the FDCPA, and falls under the § 1692c(c)(2) exception as a "specified" remedy "ordinarily invoked" by a debt collector. *See Cruz* 673 F.3d at 998; *Lewis,* 135 F.3d at 399 (6th Cir.1998); *Vazquez*, 217 F. Supp. 3d at 1352; *Flores v. Collection Consultants of California*, No. 14-771, 2015 WL 4254032, at *5 (C.D. Cal. Mar. 20, 2015). Miller has therefore failed to allege any plausible violation of § 1692c(c).

### 3. Section 1692e(10)

Section 1692e prohibits the use of any false, deceptive, or misleading representation in connection with the collection of a debt, including "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *See* 15 U.S.C. § 1692e(10). Subsection 10 is considered a catchall provision within § 1692e. *Chaga v. Simon's Agency Inc.*, No. 21-4110, 2023 WL 2188699, at *4 (E.D. Pa. Feb. 23, 2023). The Third Circuit has explained that:

> Violations of § 1692e(10) usually "include impersonating a public official, falsely representing that unpaid debts will be referred to an attorney, and misrepresenting the amount of the debt owed." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 331 (6th Cir. 2006) (internal citations omitted); *see also, e.g., Crossley v. Lieberman*, 868 F.2d 566, 571 (3d Cir. 1989) (holding attorney violated § 1692e(10) when he sent a collection letter that falsely represented that a mortgage foreclosure case was already in litigation, that threatened to take action within one week, and that failed to inform debtor of her right to cure). To state a claim under § 1692e, a false statement "must be material when viewed through the least sophisticated debtor's eyes[,]" which means "it has the potential to affect the decision-

---

of an alleged debt." Miller's assumptions, without more, cannot form the basis for a plausible claim that Defendants directed or encouraged *other* lawyers to send her letters regarding a debt that was the subject of litigation in the state court. *See Kyle v. Holina*, No. 09-90, 2009 WL 1867671, at *2 (W.D. Wis. June 29, 2009) ("Under *Iqbal*, assumptions are not enough to state a claim upon which relief may be granted.").

13

> making process of the least sophisticated debtor[.]" *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015) (emphasis omitted).

*Levins v. Healthcare Revenue Recovery Gp. LLC*, 902 F.3d 274, 284 (3d Cir. 2018).

Miller alleges that the April 10, 2023 notice wherein D&H informed her that it was a debt collector "attempting to collect a debt that [she] allegedly owed to American Express [AMEX]" was "misleading and confusing" because it did not explicitly state that D&H was an attorney for AMEX. (*Id.* at 6.) Miller, from the perspective of a "least sophisticated debtor," cannot plausibly claim that this letter is deceptive or misleading.[7] The letterhead identifies D&H as "ATTORNEYS AT LAW" and indicates that D&H is "attempting to collect a debt" owed to AMEX. (*Id.* at 21.) The April 10, 2023 letter from D&H to Miller references the original account with AMEX ending in "x42002," indicates that there was a balance of $6,225.73 outstanding on the account, sets forth various options for disputing the debt, and indicates that she has certain rights under federal law with respect to the collection of the debt. (*Id.*) See *Shareef v. Consumer Portfolio Servs. Inc.*, No. 21-4039, 2021 WL 5823011, at *3 (E.D. Pa. Dec. 7, 2021) ("Citing to the [FDCPA] and repeating the language contained in the law is insufficient to state a claim without a description of what actions CPS took to give rise to the claim against it.").

---

[7] In the FDCPA context, courts analyze communications from debt collectors from the perspective of the "least sophisticated debtor." *Jensen*, 791 F.3d at 418; *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006). "This standard is less demanding than one that inquires whether a particular debt collection communication would mislead or deceive a reasonable debtor." *Campuzano-Burgos*, 550 F.3d at 298. However, "although this standard protects naive consumers, it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3d Cir. 2000) (internal quotations omitted).

Miller also asserts that Defendants "illuding [sic] that they were federal, state, or local government agencies," obtained boxholder information from the USPS. (Compl. at 4-5.) Miller alleges that by failing to identify themselves as debt collectors to the USPS, Defendants violated 1692e(10). (*Id.*) As noted *supra*, the communication that Defendants made to USPS was for the sole purpose of confirming Miller's street address and there is no indication that Defendants alluded that they were governmental agencies in order to obtain that information. (*Id.* at 19.) Miller's reliance on an outdated regulation pertaining to boxholder information is inapposite. Moreover, Defendants actually complied with 15 U.S.C. §§ 1692b(2) and (5) of the FDCPA by not identifying themselves as debt collectors to the USPS. Miller has therefore failed to allege any plausible violation of § 1692e(10).

### 3. Section 1692k(a)(1)

Miller also references § 1692k(a)(1). This section authorizes an award of "any actual damage sustained by [any] person as a result of [a defendant's violation of the FDCPA]." 15 U.S.C. § 1692k(a)(1). Because Miller has not alleged any plausible violations of the FDCPA, this section is inapplicable.

## B. State Law Claims

Miller asserts that Defendants violated her right to privacy by "intruding upon [her] seclusion." (Compl. at 11-13.) The only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."[8]

---

[8] Because the Court has dismissed Miller's federal claims, it will not exercise supplemental jurisdiction over any state law claims.

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'" which "means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa*, LLC, 652 F.3d 340, 344 (3d Cir. 2011). A corporation is a citizen of the state in which it was incorporated as well as where it has its principal place of business. *See* U.S.C. § 1332(c)(1). It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Miller does not allege the citizenship of the parties and it does not appear that the amount in controversy has been met.[9] Because the allegations do not explicitly reveal the Defendants' citizenship for purposes of plausibly establishing diversity of citizenship, Miller has failed to meet her burden of demonstrating that this Court has subject matter jurisdiction over any state law tort claims she may be raising. *See Lincoln Ben. Life Co.*, 800 F.3d at 105 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3); *Smith v. Albert Einstein Med. Ctr.*, No. 08-5689, 2009 WL 1674715, *4 (E.D. Pa. June 11, 2009) ("Diversity jurisdiction requires

---

[9] According to the Complaint, Miller seeks "exemplary damages in the sum of $30,000" for her state law claim based on the Defendants' alleged intrusion upon her seclusion. (Compl. at 13-14.)

complete diversity between the parties. . . . [N]o single Plaintiff may be a citizen of the same state as any single Defendant.") (citations omitted).  Accordingly, any state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.

## IV.     CONCLUSION

As set forth above, Miller has failed to plausibly allege that either Defendant has violated any provision of the FDCPA in attempting to collect a debt.  The Court will grant Miller leave to proceed *in forma pauperis* and dismiss the FDCPA claims with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Miller's state law claims are dismissed without prejudice for lack of subject matter jurisdiction.  An appropriate Order follows.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, J.**